James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Rd.
Roseland, NJ 07068
Tel. 973-994-1700
JCecchi@carellabyrne.com
DEcklund@carellabyrne.com
KCooper@carellabyrne.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK J. BLOEDORN, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Civil Action No. _____ |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| TINGO GROUP INC., DARREN MERCER, HAO (KEVIN) CHEN, DOZY MMOBUOSI, | |
| Defendants. | <u>Jury Trial Demanded</u> |

Plaintiff Mark J. Bloedorn ("Plaintiff"), by and through his attorneys, alleges the following upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by

Defendants with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of a class of all investors (the "Class") who purchased or otherwise acquired Defendant Tingo Group, Inc. ("Tingo" or the "Company") common stock between December 1, 2022 and June 6, 2023, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Tingo is a holding company whose subsidiaries and entities operate in the financial technology and agri-fintech industries, primarily in Africa, the Middle East, and South Asia. One of Tingo's wholly-owned subsidiaries is Tingo Group Holdings LLC ("TGH") an agri-fintech company operating in Africa whose subsidiaries include Tingo Mobile Limited ("Tingo Mobile"), a purported Nigerian agri-fintech company. Tingo also owns Tingo Foods PLC ("Tingo Foods"), which operates in the food processing industry in Nigeria.

3.      Before trading opened on June 6, 2023, noted short seller Hindenburg Research ("Hindenburg") published a report titled "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't" (the "Hindenburg Report").

4.      The Hindenburg Report concluded that Tingo is a brazen fraud with no legitimate business operations. Tingo's revenue metrics from various subsidiaries are vastly inflated when compared with their paltry or nonexistent business activities. According to Hindenburg, Tingo has proclaimed that it is building state-of-the-art facilities that do not exist, has contracts with customer and suppliers who deny ever having heard of Tingo, and has hundreds of millions of dollars in cash reserves that are unaccounted for. Tingo's repeated lies to investors began after the acquisition of Tingo Mobile and Tingo Foods from entities controlled by Defendant Dozy Mmobuosi, an entrepreneur who has fabricated his educational and professional background and gained hundreds of millions of dollars in the transactions with Tingo.

5.      On the day the Hindenburg Report was published, Tingo's share price fell $1.23 per share, or 48%, to close at $1.32 per share, on high trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants misled

investors by failing to disclose that: (1) the Company overstated its revenue and other accounting metrics, creating a false impression of success; (2) the Company was not meaningfully engaged in many of the business activities that it claimed would drive future growth; (3) many of the Company's supposed contracts with customers and suppliers did not exist; and (4) in light of the above, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

7.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Tingo's principal executive offices are in this District, and many of the acts charged herein, including the dissemination of

materially false and misleading information, occurred in substantial part in this District.

11.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the Nasdaq, a national securities exchange.

## PARTIES

12.    Plaintiff Mark J. Bloedorn, as set forth in the accompanying certification, purchased Tingo securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant Tingo is incorporated under the laws of Delaware with principal executive offices in Montvale, New Jersey. Tingo's common stock trades on the Nasdaq under the symbol "TIO."

14.    Defendant Darren Mercer is the Company's Chief Executive Officer ("CEO"), having served in that role since April 2, 2020. Mercer signed Tingo's SEC filings during the Class Period.

15.    Defendant Hao (Kevin) Chen is the Company's Chief Financial Officer, having served in that role since November 29, 2021. Chen signed many of Tingo's SEC filings during the Class Period.

16.    Defendant Dozy Mmobuosi is the CEO of TGH and the founder of Tingo Mobile and Tingo Foods. Mmobuosi participated in Tingo's earnings calls during the Class Period and made many of the false and misleading statements identified in this Complaint.

17.    Collectively, Mercer, Chen, and Mmobuosi are referred to throughout this Complaint as the "Individual Defendants."

18.    The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## BACKGROUND

19.     Tingo was formed as a Delaware Corporation in 2002 under the name Lapis Technologies, Inc. The Company has changed its name several times since then: in 2013, it rebranded as Micronet Enertec Technologies, Inc., and in 2018 it again changed its name to MICT, Inc. The Company's shares have traded publicly on the Nasdaq since 2013.

20.     In recent years, when it was still branded as MICT, Inc., the Company was trying—and failing—to develop an insurance broker business and products in China. In 2020, the Company reported net losses of $23,636,000. Its net losses increased to $37,158,000 in 2021. Desperate to improve its financial results, the Company began searching for a merger partner. In late 2022, the Company began discussing a transaction with Tingo, Inc. and its CEO, Dozy Mmobuosi. Tingo, Inc. was an agri-fintech company operating in Africa whose subsidiaries included Tingo Mobile. On October 7, 2022, the Company announced that it had entered into an agreement to acquire 100% of the operating business and assets of Tingo, Inc., including Tingo Mobile. The transaction closed on December 1, 2022. In the press release announcing the completion of the merger, Mercer emphasized that "The completion of this acquisition markedly strengthens our balance sheet and makes us immediately significantly profitable. We therefore expect to report substantial

earnings for Q4 2022, followed by material quarter over quarter growth in both revenues and profitability in 2023 and beyond."

21.     On February 9, 2023, the Company acquired all of the outstanding shares of Tingo Foods directly from Mmobuosi. In return, the Company issued to Mmobuosi a secured promissory note in the principal amount of $204 million, which purportedly represented the value of Tingo Foods' inventory.

22.     On February 24, 2023, the Company announced that it was changing its name to Tingo Group, Inc. and would change its ticker symbol on the Nasdaq from "MICT" to "TIO."

23.     While the rebranded Company still claims to operate an insurance brokerage business, it has largely subsumed the operations of Mmobuosi's businesses and primarily operates in Nigeria. Tingo Foods purports to be a food processing business that turns raw foods into finished products like rice and pasta. It states that its mission is to "make Africa's food production self-sufficient and sustainable, by putting farmers at the heart of our story." In early 2023, Tingo Foods announced plans to construct a $1.6 billion food processing facility in Nigeria and held a groundbreaking ceremony.

24.     Mmobuosi serves as the CEO of TGH, a wholly owned subsidiary of the Company. In turn, Tingo Mobile is a wholly owned subsidiary of TGH. The Company's public filings describe Tingo Mobile as "the leading Agri-Fintech

Company operating in Africa, with a comprehensive portfolio of innovative products, including a 'device as a service' smartphone and pre-loaded platform product." The Company states that Tingo Mobile has 9.3 million subscribers. One of Tingo Mobile's products is the Nwassa platform, a "digital agricultural ecosystem" that allows farmers to sell goods online directly to consumers and eliminates the need for middlemen.

25.     TGH also operates the TingoPay Super App, which the Company states it operates in partnership with Visa. According to the Company, TingoPay allows retail customers to apply for a Tingo Visa card and access it via the TingoPay Super App to make online transactions. The service is not yet fully operational.

26.     Days after the acquisition, TGH also launched Tingo DMCC, a purported global commodities trading platform and export business. According to the Company, Tingo DMCC will facilitate the export of agricultural commodities from existing and new customers. Tingo DMCC's website states that it "connects buyers and farmers around the world and provide them with tools, technology, and intelligence to fairly trade with each other while saving cost, increasing profit, and providing affordable prices for end users." The Company announced Tingo DMCC's first export sales in the amount of $348 million on May 30, 2023.

27.     Unfortunately for the Company, its acquisition with Tingo Inc. did not make the Company profitable because Mmobuosi's businesses were empty shells.

As described in the Hindenburg Report, the operations and revenue of each subsidiary described above were vastly overstated. Rather than admit that they made a bad purchase, Defendants elected to pretend that the acquisition is driving a new era of success for Tingo. As detailed below, Defendants made a series of false and misleading statements during the Class Period that portrayed the Company's subsidiaries as successful when in fact their operations and revenue are fabricated.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

28.    The Class Period begins on December 1, 2022, when the Company closed on its acquisition of Tingo Inc.'s operating business and assets. On that date, the Company (at the time still branded MICT, Inc.) and Tingo, Inc. issued a press release in which Mercer stated,

> We firmly believe we have acquired one of the world's most exciting agri-fintech and fintech businesses. As reported in Tingo's Q3 results, ***Tingo Mobile is already highly profitable and growing strongly. Within the past few weeks, Tingo Mobile has delivered a number of major trade deals, which not only are expected to result in a more than tripling of current customer numbers***, but also marks the commencement of its global expansion.

In the same press release, Mmobuosi stated, "Today's merger is enabling us to accelerate upon our ambitious global expansion strategy, ***which in turn is already beginning to dollarize our business***, a trend that is expected to continue and grow throughout 2023 and beyond."

29.     The statements identified in ¶28 were false and misleading because Tingo Mobile was not highly profitable and had not delivered on trade deals. As set forth in the Hindenburg Report, Tingo Mobile's supposed profitability was built on the falsehood that it had millions of subscribers. Further, the trade deals referenced in Mercer's statement were fabricated, as the partners in those deals denied that any agreements existed.

## A.     False and Misleading Statements Regarding Tingo Foods

30.     On March 31, 2023, Tingo filed a Form 10-K for its fiscal year 2022 (the "2022 10-K"), which Mercer and Chen signed. The 2022 10-K stated,

> A key element of the growth plans for Tingo Foods is the development of its own food processing facility. ***To this end, through a joint venture, Tingo Foods has committed to build and operate a state-of-the-art $1.6 billion food processing facility in the Delta State of Nigeria, which is expected to be completed by the end of the first half of 2024*** . . . . In line with its Environmental, Social and Governance ("ESG") commitments, ***Tingo Foods has entered into a partnership with a third party company in the UK, Evtec Energy Plc, who have committed to fund and build a $150 million net zero carbon emission solar plant, to provide a sustainable and low-cost energy source to power its multi-billion dollar food processing facility***.

31.     On May 1, 2023, Mercer gave a presentation to investors at the Taglich Brothers Investment Conference. Tingo filed a Form 8-K that attached the slide deck for the presentation on the same date. The slide deck stated, "New state-of-the-art $1.6 billion food processing facility set to multiply capacity and revenue – scheduled

to open mid-2024." It further included a photograph of a purported rendering of the proposed facility:



32.    On May 15, 2023, Tingo filed a Form 10-Q for the quarterly period ended March 31, 2023 (the "Q1 2023 10-Q"), which Mercer and Chen signed. The Q1 2023 10-Q stated, "***Tingo Foods has also agreed to enter into a partnership with Evtec Energy Plc to build and operate our own food processing facility, which is expected to be completed by mid-2024***."

33.    Also on May 15, 2023, Tingo filed a Form 8-K announcing its quarterly earnings, which Mercer signed. Tingo attached a press release to the Form 8-K titled, "Tingo Group, Inc. Reports First Quarter 2023 Financial Results." The press release stated,

> Tingo Foods, together with its joint venture construction partner on the new state-of-the-art $1.6 billion food processing facility, celebrated the breaking of ground with a foundation laying ceremony attended by various representatives of local government and Nigeria's Ministry of Agriculture. ***Since then, significant progress has been made on the construction of the facility***

> ***including the installation of infrastructure, drainage,
> water supply and the foundations of its numerous
> buildings***. With construction work progressing as
> scheduled, the new food processing facility, to be operated
> exclusively by Tingo Foods, is on timetable and
> anticipated to open by mid-2024.

34.    Also on May 15, 2023, Tingo held an earnings call with investors.
During the call, Mmobuosi stated, "Tingo Foods is set to multiply capacity and
revenue with a new state-of-the-art $1.6 billion food processing facility in Delta
State of Nigeria. ***Our joint venture partner is already at an advanced stage of
completing work on the building's foundations and the installation of
infrastructure, drainage, and water supply and facility is on track to open by mid-
2024***."

35.    The statements identified in ¶¶30–34 were false and misleading
because the Company was not attempting to build the purported food processing
facility. As documented in the Hindenburg report, Evtec Energy Plc, Tingo Foods'
supposed joint venture partner, was dormant as of its 2022 annual report, with no
cash on hand. Further, the rendering of the facility included in the May 1, 2023 slide
deck was a stock photo of an oil refinery that the website ArtStation.com has sold
since 2018, and currently licenses for $299. Defendants' reports of progress in
building the facility were also false and misleading because as of May 24, 2023, the
Company had not begun preparing the site for work, let alone installed infrastructure,
draining, water supply, or foundations.

36.     The Q1 2023 10-Q also reported for the first time on Tingo Food's results following its acquisition by Tingo on February 9, 2023. The Q1 2023 10-Q stated that Tingo Foods' net revenue from February 9, 2023 through March 31, 2023 was *$577,219,000*, while its net profits for the same period were *$143,445,000*.

37.     During the May 15, 2023 earnings call, Mmobuosi stated, "Within the first four months of trading to December 31, 2022, Tingo Foods generated more than USD466.2 million of turnover. *The first quarter of 2023 then saw revenues grew to $577.2 million, generating an operating profit of USD143.5 million*."

38.     The statements identified in ¶¶36–37 were false and misleading because Tingo Foods had not generated $577.2 million in revenue or $143.5 million in profits in the 50 days from February 9, 2023 through March 31, 2023. During this period, Tingo did not have a food processing facility of its own and claimed to have outsourced processing to unnamed third-party processing plants in Nigeria. Moreover, the Q1 2023 10-Q does not report that Tingo Foods had any inventory. As described in the Hindenburg Report, Tingo's financial reports were riddled with errors that call into question whether it had any financial controls at all.

**B.     False and Misleading Statements Regarding Tingo Mobile**

39.     In the 2022 10-K, Tingo stated, "As part of its globalization strategy, TGH and its wholly owned subsidiary, Tingo Mobile Limited ("Tingo Mobile"), have recently begun to expand internationally and entered into trade partnerships

that are contracted to ***increase the number of subscribed farmers from 9.3 million in 2022 to more than 32 million*** . . ." The 2022 10-K continued, "***Each of TGH's current subscribers is a member of one of a small number of cooperatives with whom a subsidiary of TGH has a contractual relationship***, which facilitates the distribution of Tingo-branded smartphones into the various rural communities of user farmers/agri-workers." The filing then reiterated that "***As of December 31, 2022, Tingo Mobile had approximately 9.3 million subscribers using its mobile phones and Nwassa payment platform***."

40.     Similarly, on a March 31, 2023 earnings call, Mmobuosi stated that "In November and December, we signed trade agreements with two major partners with the aim of ***quickly expanding Tingo Mobile's customer base from 9.3 million to an expected 30 million by the end of 2023***."

41.     The 2022 10-K also discussed a purported agreement with Airtel, a Nigerian mobile network provider. According to the 2022 10-K, "***Through a Mobile Virtual Network agreement with Airtel, Tingo Mobile provides its customers in Nigeria with voice and data services***."

42.     With regard to the supply of mobile phones, the 2022 10-K stated that "***In March 2020***, ***Tingo Mobile entered into a mobile phone procurement contract with UGC Technologies Company Limited***, with located in Shenze Town, China. ***In January 2022, Tingo Mobile entered into an agreement with Bullitt Mobile***

15

*Limited*, based in Reading, England, who are a supplier of branded cellular telephone products and accessories . . . . ***UGC Technologies Company Limited and Bullitt Mobile Limited are the TGH Group's sole suppliers of mobile phones at present***."

43.     The statements identified in ¶¶39–42 were false and misleading because Tingo Mobile did not have 9.3 million subscribers and did not have agreements with Airtel, UGC Technologies Company Limited ("UGC"), or Bullitt Mobile Limited ("Bullitt"). According to the Hindenburg Report, the farming cooperatives whose members Tingo Mobile claimed to have subscribed had only a few hundred members, not 9.3 million or more, and denied ever having heard of or worked with Tingo. The leader of one cooperative described Tingo as "scammers." Moreover, the Nigerian Communications Commission has no record of Tingo being a mobile licensee. Finally, Airtel, UGC, and Bullitt each denied through spokespersons that they had contractual relationships with Tingo Mobile. The one exception was Bullitt, which had signed a contract to provide Tingo Mobile with phones in the future but has not supplied Tingo Mobile with any phones yet.

**C.     False and Misleading Statements Regarding the Nwassa Platform**

44.     The 2022 10-K described Nwassa as "Africa's leading digital agriculture ecosystem." According to the 2022 10-K, Nwassa works as follows: "***Using Tingo Mobile's ecosystem, farmers can ship produce from farms***

*throughout Nigeria, in both retail and wholesale quantities. Tingo Mobile's system provides real-time pricing, straight from the farms, which eliminates middlemen*. The customers of Nwassa users pay for produce bought using available pricing on the platform." It added that "*the platform processes approximately $1 billion USD in gross transaction value (GTV) on a monthly basis*."

45.    On the May 15, 2023 earnings call, Chen reported "*Nwassa platform revenues of $125.3 million*" for the first quarter of 2023. The slide deck accompanying the call listed the same number in Nwassa quarterly revenue.

46.    The statements identified in ¶¶44–45 were false and misleading because the Nwassa platform is not operational. According to the Hindenburg Report, the platform's website is under maintenance and has been for months. Archives of the platform reveal that it was never fully developed and listed just a few products with no reviews or ratings. The revenue and GTV numbers are false and misleading because the Nwassa platform was not capable of processing transactions during the time the statements were made.

**D.    False and Misleading Statements Regarding Tingo DMCC**

47.    On May 30, 2023, Tingo issued a press release announcing that Tingo DMCC "*has completed its first batch of export deals, generating $348 million of sales with a gross profit approaching $100 million*." The press release added that "The sales completed today are part of an anticipated long-term multi-billion-dollar

pipeline of export transactions, ***more than $1 billion of which are currently being processed for expected delivery by the third quarter of 2023***."

48.     The statements identified in ¶47 were false and misleading because Tingo fabricated or vastly inflated it export data. According to the Hindenburg Report, Nigerian customs data do not contain any records of Tingo or Tingo DMCC exports, let alone in the amount of $348 million. Further, Tingo's claim to be actively processing more than $1 billion in export transactions is false and misleading because Nigeria's total agricultural exports in 2022 were $1.15 billion. Further, Tingo DMCC's website does not provide for live trading or the ability to create a trading account, and is full of non-functioning links and fake testimonials.

**E.      False and Misleading Statements Regarding Tingo's Cash Balance**

49.     In the Q1 2023 10-Q, Tingo claimed to have $780,153,000 in cash and cash equivalents. The 10-Q claimed that "***the majority of the cash is held at its bank in Nigeria***, and there are certain foreign exchange restrictions in place that limit the conversion of such cash into US Dollars and other currencies."

50.     The statements identified in ¶49 were false and misleading because Tingo's financial statements preclude the possibility that Tingo has over $780 million in cash. As the Hindenburg Report notes, Tingo's interest income for the first quarter of 2023 should have been roughly $12 million when assuming an

interest rate of 8%, the market rate for Nigerian deposits. Tingo, however, reported just $1,444,000 in financial income for the quarter.

## THE TRUTH BEGINS TO EMERGE

51.    On June 6, 2023, noted Wall Street short seller Hindenburg Research issued a report charging that Tingo was a fraud with fabricated business operations and financials. According to the Hindenburg Report, Tingo's statements about the successful operations of its various business segments, including Tingo Foods, Tingo Mobile, Nwassa, and Tingo DMCC were false. The Hindenburg Report concluded that "Tingo is a brazen fraud that should serve as a humiliating embarrassment for all involved."

52.    The Hindenburg Report bears all the hallmarks of a credible analyst report. For example, the Hindenburg Report was based on an independent investigation that included visits to Nigeria to examine Tingo's claims, interviews with Tingo's supposed business partners, and review of documentary evidence that directly contradicted the Company's many misstatements. Following issuance of the Hindenburg Report, Tingo issued a press release that claimed to "categorically refute[]" all of the allegations in the Hindenburg Report, but notably did not contradict any of the specific factual assertions.

53.    In addition, Hindenburg Research has a credible track record of investigating companies suspected of fraud. For example, Hindenburg recently

uncovered massive fraud at electric truck manufacturer, Nikola, Inc., whose former founder and Chairman, Trevor Milton, was tried and convicted of securities fraud and wire fraud following the Hindenburg investigation.

## LOSS CAUSATION

54.     Defendants' wrongful conduct was the direct and proximate cause of the losses suffered by Plaintiff and the Class.

55.     During the Class Period, Plaintiff and the Class purchased Tingo securities at artificially inflated prices. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. Defendants' false and misleading statements were the direct and proximate cause of such losses. The timing, scope, and scale of the drop in the share price for the Company's common stock following the publication of the Hindenburg Report establishes as much.

56.     The Hindenburg Report was published at approximately 9:00 AM EST on June 6, 2023. By market close on June 6, 2023, Tingo's stock price had dropped $1.23 per share, or 48%, wiping out more than $148 million in market capitalization.

57.     The publication of the Hindenburg Report, and its central conclusions, were widely reported, receiving online coverage from Reuters, Bloomberg, and Yahoo! Finance, among others.

20

## ADDITIONAL INDICIA OF SCIENTER

58.    Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their knowledge of information reflecting the true facts regarding the activities of Tingo's business segments, their control over, and/or receipt and/or modification of the Company's materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Tingo's operations, participated in the fraudulent scheme alleged herein.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Tingo common stock between December 1, 2022 and June 6, 2023, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

60.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. More than 120,000,000 Tingo shares trade on the Nasdaq.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.  Whether Defendants violated the Exchange Act;

    b.  Whether Defendants omitted and/or misrepresented material facts;

    c.  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e.  Whether the price of the Company's stock was artificially inflated; and

    f.  The extent of damage sustained by Class members and the appropriate measure of damages.

62.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

63.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

65.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.  The omissions and misrepresentations were material;

c.  The Company's common stock traded in efficient markets;

d.  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

66.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

### NO SAFE HARBOR

67.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## CAUSES OF ACTION

### <u>Count I</u>
**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

71.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market

prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against The Individual Defendants)**

72.    The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

26

(b)      awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c)      awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)      awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: June 8, 2023                           Respectfully submitted,

                                                          /s/ James E. Cecchi
                                                          James E. Cecchi
                                                          Donald A. Ecklund
                                                          Kevin G. Cooper
                                                          Carella Byrne Cecchi  Olstein
                                                          Brody & Agnello, P.C. 5
                                                          Becker Farm Road Roseland,
                                                          NJ 07068
                                                          (973) 994-1700
                                                          JCecchi@carellabyrne.com
                                                          DEcklund@carellabyrne.com
                                                          KCooper@carellabyrne.com

                                                          *Local Counsel for Plaintiff*

Additional Counsel:

**BLOCK & LEVITON LLP**
Jeffrey C. Block, jeff@blockleviton.com (*pro hac vice* motion to be filed)
Jacob A. Walker, jake@blockleviton.com (*pro hac vice* motion to be filed)
Nathan Abelman, nathan@blockleviton.com (*pro hac vice* motion to be filed)
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax